```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x
In re GEORGE WASHINGTON BRIDGE BUS   :
STATION DEVELOPMENT VENTURE LLC,     :
                                     :
     Debtor.                         :
------------------------------------x
TUTOR PERINI BUILDING CORP.,         :
                                     :
     Appellant,                      :
                                     :    20-cv-7433 (JSR)
          -v-                        :
                                     :    OPINION AND ORDER
NEW YORK CITY REGIONAL CENTER        :
GEORGE WASHINGTON BRIDGE BUS         :
STATION AND INFRASTRUCTURE           :
DEVELOPMENT FUND LLC, et al.,        :
                                     :
     Appellees.                      :
------------------------------------x
```

Tutor Perini Building Corp. appeals the bankruptcy court's August 11, 2020 "Order Regarding Disputed Ground Lease Issues," Bankr. Dkt. 358,[1] which held that Tutor Perini is not a third-party beneficiary of — and has no rights to assert an 11 U.S.C. § 365(b)(1)(A) "cure claim" with respect to — the 2011 ground lease entered into by the debtor and the Port Authority of New York and New Jersey. Finding itself in agreement with the well-reasoned decision of the Bankruptcy Court, this Court affirms.

---

[1] "Bankr Dkt." citations refer to the docket of the bankruptcy court proceeding, *In re George Washington Bridge Bus Station Development Venture LLC*, 19-bk-13196 (DSJ) (Bankr. S.D.N.Y.). "AER" citations refer to the Appellant's Appendix of Excerpts of Record, ECF No. 8 (Oct. 26, 2020).

1

George Washington Bridge Bus Station Development Venture LLC, the debtor in the instant bankruptcy proceeding, is the developer on an approximately $183 million project to renovate and improve a Port Authority bus station at the Manhattan end of the George Washington Bridge. *See* Bankr. Dkt. 358-1 at 49 (bench decision of the bankruptcy court). In 2011, the debtor and the Port Authority initiated a public-private venture to improve the facility by expanding the bus terminal and constructing a large retail mall on the same site. *Id.* In July of that year, the debtor and the Port Authority memorialized the terms of their arrangement in a ground lease, which, in essence, obligated the debtor to arrange for the necessary renovations on the bus station. In exchange, the Port Authority promised a substantial monetary contribution toward the costs of construction, and, as landlord, it awarded the debtor the rights to operate and manage the retail center for up to ninety-nine years.[2] *Id.* at 49–50; *see also* AER at 173–342 (ground lease).

As relevant here, the ground lease contemplated that the debtor would retain a general contractor to perform the construction work. *See* AER at 210. Section 5.7(c) of the ground lease further specified that the debtor, not the Port Authority,

---

[2] The debtor raised additional funds for the redevelopment from several private lenders (whose claims are mostly secured), including the New York City Regional Center George Washington Bridge Bus Station and Infrastructure Development Fund LLC and others, also named as appellees here. *See* Joint Resp. Br. of Appellees, ECF No. 17 at 8 (Nov. 25, 2020).

2

would be responsible for paying the general contractor. AER at 220. That section states that, with certain conditions not at issue, "the Port Authority shall have no obligations or liabilities in connection with the performance of any Construction Work or the contracts for the performance thereof entered into by the [debtor]," and that "the [debtor] shall pay all claims lawfully made against it by its contractors, subcontractors, material-men and workmen . . . arising out of or in connection with or because of the performance of the Construction Work." *Id.*

In 2013, the debtor and appellant Tutor Perini entered into a construction contract, under which the latter agreed to serve as general contractor for the redevelopment project. Bankr. Dkt. 358-1 at 50. Work began, but the project was soon plagued by delays and disputes between the debtor and Tutor Perini. *Id.* In 2015, the debtor commenced an arbitration proceeding against Tutor Perini. *Id.* Tutor Perini countered with a claim for $113 million in damages. *Id.* at 51. Although the project eventually opened to the public in 2017, the delays and extra costs, including those related to the arbitration, caused the debtor to file for Chapter 11 protection in October 2019. *See* Answering Br. of Debtor, ECF No. 13 at 6 (Nov. 25, 2020).

Upon entering Chapter 11, the debtor proposed a reorganization strategy based on a sale of substantially all its assets, of which the ground lease was the most valuable. Bankr.

3

Dkt. 358-1 at 52. Such a sale would require the debtor to exercise its ability under 11 U.S.C. § 365(a) to "assume" the unexpired ground lease, and then to assign it to a buyer. But both Tutor Perini and the Port Authority initially asserted the right to bring a "cure" claim against the debtor under 11 U.S.C. § 365(b)(1)(A). *See* Bankr. Dkt. 170; *id.* 358-1 at 52, 54. That is, both asserted the right to demand that the debtor, before assuming and assigning the ground lease, cure its purported default thereunder, that default being the debtor's failure to pay $113 million to Tutor Perini as allegedly required by § 5.7(c) of the ground lease.

After months of negotiations with the debtor and the private lenders, however, the Port Authority agreed to waive its cure claim and allow the sale to proceed. Bankr. Dkt. 358-1 at 54-55. In June 2020, the debtor, the Port Authority, and the lenders jointly asked the bankruptcy court to approve the settlement pursuant to Federal Rule of Bankruptcy Procedure 9019. *See id.* at 54-56. Shortly thereafter, Tutor Perini filed a limited objection to the settlement — the only objection by any party — arguing that a settlement to which it was not a party could not extinguish Tutor Perini's *own* right to assert a cure claim.[3] *Id.* at 56, 66-67. The debtor responded that Tutor Perini had no such right. *Id.* at 67.

---

[3] Tutor Perini also filed several unsuccessful objections and motions at earlier procedural stages of the debtor's contemplated sale. *See, e.g.*, Bankr. Dkt. 34, 78, 104. None are before this Court on appeal.

4

The bankruptcy court determined that the sale process could not realistically continue without a conclusive determination of whether any party could assert cure rights under the ground lease. *See id.* at 60. Accordingly, on July 14, 2020, the bankruptcy court held a hearing on the proposed settlement and on Tutor Perini's limited objection. At the hearing, Tutor Perini advanced two legal theories as to why it would be entitled to demand that the debtor cure its alleged default under § 5.7(c) before assuming the ground lease. First, Tutor Perini argued that it was a third-party beneficiary of the ground lease, with rights to enforce it. Second, Tutor Perini contended that, even if it were not a third-party beneficiary, its economic interest in the debtor's performance under the ground lease entitled it to bring a cure claim because the relevant statute contains no express limitation on who may bring such a claim. *See generally id.* at 68–80.

After extensive briefing and oral argument by the parties, the Bankruptcy Court (Chapman, J.) delivered a detailed bench ruling in which it rejected both of Tutor Perini's asserted grounds for bringing a cure claim. *See generally id.* On August 11, 2020, the Bankruptcy Court entered an Order Regarding Disputed Ground Lease Issues, Bankr. Dkt. 358, which declared that Tutor Perini is not a third-party beneficiary of the ground lease and has no cure rights thereunder. The next day, the Bankruptcy Court issued an order approving the proposed settlement among the Port Authority,

5

the lenders, and the debtor. Bankr. Dkt. 360. Tutor Perini appealed.[4]

At stake here, of course, is the issue of priority. At the heart of the American bankruptcy system is the absolute priority rule, under which secured creditors are entitled to be paid in full in a corporate reorganization before unsecured creditors see any recovery. *See* 11 U.S.C. § 1129(b). The cure right under § 365(b)(1)(A) is a limited exception to that rule, granting priority even above that of a secured claim to any payments necessary to cure a default under an assumed executory contract. 11 U.S.C. §§ 503(b)(1)(A); 507(a)(2); *see N.L.R.B. v. Bildisco & Bildisco*, 465 U.S. 513, 531 (1984). Accordingly, if Tutor Perini has a cure right under the ground lease, then its $113 million unsecured claim must be paid in full before even the secured lenders may recover. But if Tutor Perini has no such cure right, then it may recover only along with the other general creditors.[5]

---

[4] Only the Order Regarding Disputed Ground Lease Issues, Bankr. Dkt. 358, is before this Court on appeal. Tutor Perini separately appealed the order approving the proposed settlement, Bankr. Dkt. 360, raising a distinct issue in that appeal. That order has already been affirmed by another court in this district. *See In re George Washington Bridge Bus Station Dev. Venture LLC*, No. 20-cv-7257 (AKH), 2021 WL 738755 (S.D.N.Y. Feb. 25, 2021).

[5] It is worth noting that, in addition to seeking to recover on its $113 million claim against the debtor, Tutor Perini also sued both the Port Authority and the lenders for that amount in separate actions before other courts. *See Tutor Perini Bldg. Corp. v. Port Auth. Of N.Y. & N.J.*, 143 N.Y.S.3d 12, 13 (N.Y. App. Div. 1st Dep't 2021) (denying in part the Port Authority's motion to

Although Tutor Perini's predicament is clear, this Court has no choice but to hold that Tutor Perini has no cure rights under the ground lease. Beginning with the question of whether Tutor Perini is a third-party beneficiary of the ground lease, this Court agrees that it is not.[6] New York law typically treats third-party beneficiary status as a question of fact, given that such a designation turns on the intent of the contracting parties. *See Debary v. Harrah's Operating Co., Inc.*, 465 F. Supp. 2d 250, 261 (S.D.N.Y. 2006). And this Court reviews the factual determinations of the bankruptcy court for clear error. *See In re T.R. Acquisition Corp.*, 309 B.R. 830, 835 (S.D.N.Y. 2003). In this case, however, the Bankruptcy Court's determinations as to the intent of the parties turned mostly on the language of the ground lease, rather

---

dismiss); Stip. & Order of Discontinuance without Prejudice, *Tutor Perini Bldg. Corp. v. N.Y.C. Regional Ctr., LLC*, No. 20-cv-731 (PAE), ECF No. 137 (S.D.N.Y. July 14, 2021).

[6] Because Tutor Perini did not raise its arguments relating to the ground lease in the appeal of the order approving the proposed settlement, even though it could have done so there, the appellees here argue that Tutor Perini's arguments are forfeited and that this appeal should accordingly be dismissed. (The appellees further suggest that Tutor Perini strategically chose to litigate two separate appeals in order to double its chance of receiving a favorable outcome.) But, as noted at oral argument, the Court is hesitant to penalize Tutor Perini for the Southern District's not having a related-case rule for bankruptcy appeals. Oral Arg. Tr., ECF No. 32 at 16:13-24 (Apr. 6, 2021). The Court will accordingly exercise its discretion to consider the merits of Tutor Perini's arguments. *Cf. Universal Church v. Geltzer*, 463 F.3d 218, 228 (2d Cir. 2006).

than assessments of credibility, demeanor, or the like. *See* Bankr. Dkt. 358-1 at 68-75. That seems essentially a legal conclusion, which this Court would be inclined to review *de novo*. *T.R. Acquisition*, 309 B.R. at 835. But, as it happens, it is not necessary to firmly resolve the standard of review one way or the other, because even under the more lenient standard, this Court would hold that Tutor Perini is not a third-party beneficiary of the ground lease.

Under New York law, a person is a third-party beneficiary of a contract where (1) there is a valid and binding contract between the contracting parties, (2) that contract "was intended for the third party's benefit," and (3) the benefit to that third party "is sufficiently immediate to indicate the assumption by the contracting party of a duty to compensate the third party if the benefit is lost." *In re Lehman Bros. Holdings*, 515 B.R. 171, 177-78 (Bankr. S.D.N.Y. 2014); *see also* AER 337 (provision of the ground lease stating that New York law applies). A court should consider both "the circumstances surrounding the transaction as well as the actual language of the contract" to determine the contracting parties' intentions. *Subaru Distribs. Corp. v. Subaru of Am., Inc.*, 425 F.3d 119, 124 (2d Cir. 2005). The party claiming that it is a third-party beneficiary "has the burden of demonstrating that he has an enforceable right." *Redzepagic v.*

*Hammer*, No. 14-cv-9808 (ER), 2017 WL 780809, at *9 (S.D.N.Y. Feb. 27, 2017).

Applying these standards, the Bankruptcy Court properly concluded that the Port Authority and the debtor did not intend the ground lease to confer an enforceable benefit on Tutor Perini. To begin with the most basic observation, the ground lease does not name Tutor Perini (nor the general contractor in the abstract) as a third-party beneficiary. And this is not without significance. The ground lease refers in several places to the prospective general contractor (the "Project CM"), *see, e.g.*, AER 213, 214, 215, 218, 221, evincing a clear intent by the contracting parties that the debtor would contract out the construction work. But the ground lease does not provide that such a general contractor would become a third-party beneficiary. This omission, particularly in combination with the ground lease's integration clause, provides powerful evidence that Tutor Perini is not a third-party beneficiary. *See Debary*, 465 F. Supp. 2d at 267-68.

Even more important, the Ground Lease *does* name other parties — specifically, the debtor's subtenants — as third-party beneficiaries. AER 296. To hold that Tutor Perini is also such a beneficiary without being so named would defy not only common principles of contract interpretation but also common sense. *See Quadrant Structured Prod. Co., Ltd. v.* Vertin, 23 N.Y.3d 549, 560 (N.Y. 2014) (referencing the "*expressio unius*" canon of contract

9

interpretation) And of further, though lesser, significance, both the debtor and the Port Authority acknowledged as part of the 2020 settlement that they did not intend Tutor Perini to be a third-party beneficiary of the ground lease. Bankr. Dkt. 358-1 at 75. Though self-serving, these parties' after-the-fact statements are not irrelevant to their intent at the time of contracting.[7]

Tutor Perini's responses are unavailing. Tutor Perini first cites the general proposition that "[a] contractual requirement that the promisor render performance directly to the third party shows an intent to benefit the third party." *Subaru Distribs. Corp.*, 425 F.3d at 124. In Tutor Perini's view, § 5.7(c) of the ground lease — which, as noted above, requires the debtor to "pay all claims lawfully made against it by its contractors" — constitutes a promise by the debtor to render performance (payment) directly to Tutor Perini. AER 220. But as the appellees persuasively argue, the better reading of this language is that it simply allocates payment responsibilities to the debtor rather than the Port Authority. In other words, although the ground lease obligates the Port Authority to contribute a set amount of funds towards the costs of construction, § 5.7(c) places the

---

[7] Contrary to Tutor Perini's position, Federal Rule of Evidence 408 plainly does not prohibit consideration of these statements as evidence of the debtor's and the Port Authority's intent in 2011.

responsibility of actually paying the general contractor on the debtor. That reading is the only one consistent with the preceding sentence in § 5.7(c), which states that "the Port Authority shall have no obligations or liabilities in connection with the performance of any Construction Work or the contracts for the performance thereof entered into by the [debtor]." AER 220. Accordingly, § 5.7(c) does not require the debtor to render performance directly to Tutor Perini; it rather clarifies that the debtor's rendering of performance to the *Port Authority* includes the responsibility to pay Tutor Perini.

Tutor Perini next argues that it is a third-party beneficiary of the ground lease because the ground lease imposes obligations directly on Tutor Perini. But the Court does not share this reading of the ground lease. The provisions that Tutor Perini cites do not place obligations directly on Tutor Perini, but rather *require the debtor* — a party to the ground lease — to place these obligations on the general contractor via a separate contract. *See, e.g.*, AER 213 (requiring the debtor to "enter into a single general construction contract for the entire Project" that requires the general contractor, *inter alia*, to competitively bid out the project to subcontractors); AER 214 (requiring the debtor to engage the general contractor in regularly certifying that all subcontractors have been paid); AER 219 (prohibiting the debtor from engaging a particular general contractor until that

11

contractor "has completed and submitted to the Port Authority the required vendor integrity questionnaire"). These provisions of the ground lease therefore do not sufficiently demonstrate an intent to confer a benefit, much less an immediate one, on the general contractor. *See In re Lehman Bros. Holdings*, 515 B.R. at 177-78.

Finally, Tutor Perini also goes so far as to suggest that the 2013 construction contract between the debtor and Tutor Perini retroactively amended the terms of the ground lease to name Tutor Perini as a third-party beneficiary, or even a party, of that agreement. Oral Arg. Tr., ECF No. 32 at 19:10-14 (Apr. 6, 2021); Bankr. Dkt. 139. But the Court cannot see how such a result could be possible, given that the Port Authority (though it approved the debtor's choice of Tutor Perini as general contractor) was not a party to the construction contract.[8] The Court accordingly

---

[8] Any holding that the construction contract created a contractual relationship between the Port Authority and Tutor Perini would be, at the very least, inconsistent with the New York Appellate Division's recent decision dismissing Tutor Perini's claim against the Port Authority for breach of contract with respect to the 2013 construction contract. *Tutor Perini Bldg. Corp. v. Port Auth. Of N.Y. & N.J.*, 143 N.Y.S.3d 12, 13 (N.Y. App. Div. 1st Dep't 2021). In so holding, the Appellate Division rejecting Tutor Perini's theory that it and the Port Authority were in "the functional equivalent of privity." *Id.* Underscoring that point, the Appellate Division allowed Tutor Perini's claim against the Port Authority for *unjust enrichment* to proceed, *id.* at 14, which it presumably would not have done had there been a contract between those two parties. *See Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.*, 70 N.Y.2d 382, 388 (N.Y. 1987) ("The existence of a valid and enforceable written contract governing a particular subject matter

12

concludes that Tutor Perini is not a third-party beneficiary of the ground lease.

Moving to the second issue, Tutor Perini contends that even an economic interest in the ground lease short of that of a third-party beneficiary allows it to assert a cure claim under 11 U.S.C. § 365(b)(1)(A), because the statute contains no express limitation on who may bring such a claim. Reviewing Tutor Perini's argument *de novo*, see *T.R. Acquisition*, 309 B.R. at 835, the Court disagrees. In general, only the non-debtor party to an assumed executory contract has the right to assert an administrative-priority cure claim under § 365(b). *Cf. In re Madison's Partner Grp., Inc.*, 67 B.R. 633, 635 (Bankr. D. Minn. 1986) ("Nothing in § 365 . . . suggests that Congress intended that the nonqualifying claims of others should receive the same priority treatment simply because they might be beneficiaries under cross-default clauses in nonresidential real estate leases."); *In re Kopel*, 232 B.R. 57, 65–66 (Bankr. E.D.N.Y. 1999) ("A creditor cannot use the protections afforded it by section 365(b) . . . in order to maximize its returns by treating unrelated unsecured debt as a *de facto* priority obligation.").

The coherence of the statutory scheme as a whole demands this interpretation. Section 365(b) creates a significant, but limited,

---

ordinarily precludes recovery in quasi contract for events arising out of the same subject matter.").

exception to the Bankruptcy Code's priority scheme. It allows the debtor's counterparty on an executory contract to demand the cure of any pre-petition defaults, as well as "adequate assurance of future performance," before that contract may be assumed. *See* 11 U.S.C. § 365(b)(1)(A)-(C). And the Code also provides for superior priority for such a cure claim, even where a breach-of-contract claim by the counterparty in the event of the debtor's breach would otherwise have been treated as unsecured. *See* 11 U.S.C. § 503(b)(1)(A).

This exception to the priority rule follows from a clear statutory purpose: an in-the-money executory contract, like any other asset, is property of the estate, *see* 11 U.S.C. § 541, and its value ought to contribute to the creditors' recovery. But, at the same time, the estate is only entitled to as much value as the debtor bargained for. And allowing the debtor to assume a defaulted contract — that is, to force the counterparty to continue performing notwithstanding the debtor's own failure to perform — would enrich the debtor at that counterparty's expense. *See In re Ionosphere Clubs, Inc.*, 85 F.3d 992, 999 (2d Cir. 1996); *see also* Jay Lawrence Westbrook & Kelsi Stayart White, *The Demystification of Contracts in Bankruptcy*, 91 Am. Bankr. L.J. 481, 486 & n. 29 (2017). It thus makes good sense to allow administrative-priority cure claims by the debtor's counterparty on an executory contract. But nothing in the preceding rationale would justify a cure claim

14

brought by a third party, who is not bound to continue performing under the executory contract, and who merely has an economic interest in the debtor's continued performance.

Read in context, the language of § 365(b)(1)(A) endorses an approach consistent with this statutory purpose. Subparagraphs (A) through (C) of § 365(b)(1) each provide for a distinct type of relief to which the counterparty is entitled before the debtor assumes the contract: cure of defaults, pecuniary compensation, and adequate assurance of future performance. But although the type of relief may vary depending on the nature of the default, the statutory structure indicates that these are similar remedies and are intended to benefit the same party. Further, although § 365(b)(1)(A) does not expressly limit relief to the non-debtor party to an executory contract, § 365(b)(1)(B) *does* so limit relief. 11 U.S.C. § 365(b)(1)(B) ("[T]he trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee . . . compensates . . . *a party other than the debtor to such contract or lease*, for any actual pecuniary loss to such party resulting from such default . . . .") (emphasis added). Accordingly, § 365(b)(1)(A) must implicitly contain the same limitation.

As the Bankruptcy Court explained at some length, Tutor Perini's position on this question "would turn the Bankruptcy Code's priority scheme on its head." Bankr. Dkt. 358-1 at 77. The

15

debtor's counterparty on the ground lease is the Port Authority, which, by the debtor's assumption of the ground lease, will be forced to continue performing thereunder (i.e., by continuing to grant the debtor the rights to operate the retail mall). The Port Authority may thus bring a cure claim with respect to the ground lease. But Tutor Perini is not a party to the ground lease. Its rights and obligations vis-à-vis the debtor are defined entirely by the 2013 construction contract, and so the debtor's assumption of the ground lease will not lock Tutor Perini into marginally more future performance. Tutor Perini has a purported economic interest in the debtor's performance under § 5.7(c) of the ground lease, but allowing that interest to justify a cure claim would so broaden the scope of § 365(b)(1) as allow virtually any unsecured creditor to assert a cure claim. And that would indeed be an absurd result, one that the statute cannot possibly have countenanced.

Finally, in one last gambit, Tutor Perini cites two cases that supposedly undermine the general proposition that only the non-debtor party to an executory contract may bring a cure claim. *See In re USN Commc'ns, Inc.*, No. 99-383, 1999 WL 33496079 (Bankr. D. Del. July 30, 1999); *In re Bldg. Block Child Care Ctrs., Inc.*, 234 B.R. 762 (B.A.P. 9th Cir. 1999). But these cases are easily distinguishable. Each involved a cure claim on an unexpired lease brought by a former landlord who had, as a condition of assigning the lease to the new landlord, retained the contractual right to

16

bring a cure claim for unpaid rent. Although these former landlords' cure claims were allowed to proceed, Tutor Perini's position with respect to the ground lease is not at all analogous. Tutor Perini was *never* a party to the ground lease, and it has no contractual right to bring a cure claim thereunder.[9]

For the foregoing reasons, the Bankruptcy Court's order concluding that Tutor Perini is not a third-party beneficiary of the ground lease and that Tutor Perini has no right to assert a § 365(b)(1)(A) cure claim thereunder, *see* Bankr. Dkt. 358, is hereby affirmed.

SO ORDERED

Dated: New York, NY
August 4, 2021

JED S. RAKOFF, U.S.D.J.

---

[9] All that these cases demonstrate is that there may be some situations where a party other than the current non-debtor party to an executory contract may bring a cure claim. But the Court need not decide the full range of such situations, because Tutor Perini plainly falls outside of it. Indeed, following the bankruptcy court and the parties, the Court's preceding discussion has merely assumed without deciding that Tutor Perini could have brought such a claim if it were a third-party beneficiary of the ground lease.